952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Glen E. RENNEY; Ann Fahner; Florence Goss; Ralph Holtrop;
Ariea Sietsma; Eloise Timmer; and Lyster E.
Wick, Plaintiffs-Appellants (90-1519),
Cross-Appellees,
v.
A.B. ELECTROLUX; and Bankers Trust Company, Defendants,
White Consolidated Industries, Inc., Defendants-Appellees,
Cross-Appellants (90-1593).
 Nos. 90-1519, 90-1593.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1992.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiffs are seven former salaried employees of defendant, White Consolidated Industries, Inc. (WCI), who were employed until 1987 at WCI's Grand Rapids, Michigan, facility. A.B. Electrolux acquired WCI in 1986. In an action brought in the district court pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., plaintiffs claimed that they are entitled to "special early retirement" pension benefits rather than the "regular early retirement" benefits they were awarded. WCI was the sponsor and administrator of the pension plan. Plaintiffs appeal the district court's order granting summary judgment to WCI, and WCI cross-appeals the court's award of summary judgment to plaintiff Glen E. Renney on his claim that it failed to supply him required documentation.
 
 
 2
 WCI had acquired the Grand Rapids plant from American Motors Corporation at a time when products were manufactured there under the Kelvinator brand name. The Kelvinator pension plan, which was in effect at the time of acquisition, provided for two types of early retirement: regular early retirement and special early retirement. Eligibility requirements for early retirement were found in Article IV, Section 2 of the plan:
 
 
 3
 (a) Regular Early Retirement. On or after January 1, 1976, any Employee who has attained age 55 and who has completed ten (10) years of Credited Service may, at his election and without the consent of the Employer, retire at any time. In the event of such early retirement, the pension payable to such retired Employee shall be in the amount hereinafter specified in Section 2(a) or Section 2(b) of Article V.
 
 
 4
 (b) Special Early Retirement. On or after January 1, 1976, any Employee who has attained age 55 and completed ten (10) years of Credited Service may ... under mutually satisfactory conditions retire at any time thereafter. In the event of such early retirement, the pension payable to such retired Employee shall be in the amount hereinafter specified in Section 2(c) of Article V.
 
 
 5
 Special early retirement benefits were more generous and, as can be seen from the quoted language, were awarded under the same age and service circumstances as regular early retirement benefits. However, instead of referring to the employee's exclusive option, the special early retirement provision substitutes "mutually satisfactory conditions."
 
 
 6
 In February 1987, WCI announced that on April 1st, it would implement a new company-wide employee benefit program to replace the various programs that had resulted from mergers and acquisitions. The new program affected pension benefits and in certain aspects, including medical insurance benefits, was viewed by some employees of the Grand Rapids plant as less attractive than the existing Kelvinator plan. However, WCI granted employees who would be eligible to retire by December 31, 1987, the option to retire under either the old or the new plan, whichever they deemed more advantageous. This window of opportunity would exist from April 1 through December 31, and was couched in this language:
 
 
 7
 If you are eligible to retire by December 31, 1987, the plan also contains a one-time opportunity for you to elect retirement under the Pension Plan in effect on March 31, 1987. If you are eligible, and wish to take advantage of this opportunity, you must make your election and retire before December 31, 1987. If you elect the prior pension plan benefit, you will automatically receive the prior retiree life insurance coverage. You also will be covered under the new medical plan, but your share of the cost and the duration of your coverage will be the same as it would have been in March, 1987.
 
 
 8
 With the exception of Eloise Timmer, who resigned, the employment of all the plaintiffs was terminated by August 1987 as the result of a reduction in force at the Grand Rapids plant. All plaintiffs took advantage of the window election period and, at various times prior to September 1, opted to take early retirement. Although some may have requested special early retirement benefits, all understood they would receive only the regular early retirement benefits. In August, after all plaintiffs had elected to retire under the Kelvinator plan, WCI decided to close the Grand Rapids plant. In order to retain employees needed to assure the orderly shut-down of the plant, the company decided to offer special early retirement benefits to employees who were eligible to retire and elected to do so under the Kelvinator plan, but who would agree to work after September 1, until a specified future date. The window election period was extended from December 31, 1987 until July 31, 1988.
 
 
 9
 By their lawsuit, plaintiffs contend that they, too, are entitled to the special early retirement benefits.
 
 
 10
 The essence of plaintiffs' claim, that WCI incorrectly interpreted and applied provisions of the Kelvinator plan, is that under the plain language of section 2(a), employees who elect to retire contrary to their employer's desire will receive regular early retirement benefits, whereas under section 2(b), those who retire with the consent of the employer pursuant to any conditions agreed upon will receive the higher special early retirement benefits. Plaintiffs argue that since they were eligible to take early retirement prior to December 31, and did so pursuant to the conditions set out in WCI's window of opportunity election, they therefore have retired "under mutually satisfactory conditions" as required by section 2(b), and are eligible for special early retirement benefits.
 
 
 11
 WCI, on the other hand, argues that section 2(a)'s language--"any employee ... may at his election and without consent of the employer"--does not support the simplistic adversarial interpretation given it by plaintiffs. Instead, WCI contends, the language simply points out to an eligible employee that he or she is not required to obtain the employer's consent in order to retire early. The district court agreed, pointing out that the language, viewed in its proper context, simply advises employees that their employer has impliedly consented in advance to their early retirement when they are eligible by age and service. On the other hand, the receipt of special early retirement benefits is conditioned on more than the election of an eligible employee and the passive acquiescence of the employer. Enjoyment of higher benefits is predicated upon an eligible employee retiring "under mutually satisfactory conditions," arrived at in the context of the employer agreeing to pay the higher benefits. Whereas plaintiffs contend that the mutual agreement condition applies only to the decision to retire, the district court concluded that it also applies to the payment of the higher benefits.
 
 
 12
 We are unable to say that the district court erred in denying plaintiffs the benefits claimed. We agree with its conclusion that it is immaterial whether an arbitrary and capricious or a de novo standard is used to review WCI's administration of the plan, since WCI selected the more reasonable interpretation of the plan language. Section 2(b) clearly contemplates an agreement between employer and employee about special conditions surrounding an employee's retiring early that would motivate the former to pay more generous retirement benefits. Payment of regular benefits, pursuant to section 2(a), is conditioned upon an employee's "election ... without the consent of the employer," while payment of special benefits, pursuant to section 2(b), is conditioned upon "mutually satisfactory conditions." Under section 2(a), the employer's consent to a decision to take early retirement is immaterial, and the employee's unilateral decision to retire results in regular benefits. It follows that early retirement "under mutually satisfactory conditions," pursuant to section 2(b), must mean something more than an employer simply acquiescing in an employee's decision to retire early, since, as the district court noted, that is the scenario contemplated in section 2(a).
 
 
 13
 One can readily conceive of numerous circumstances under which an employer would be willing to pay higher benefits to some employees who are eligible to retire early on the basis of age and service. Most apparent is the situation where an employer wishes to induce a reluctant employee to take early retirement. Indeed, that was the experience of one of the plaintiffs who had, on several occasions, declined WCI's offer that he receive special benefits in exchange for agreeing to retire early. Alternatively, an employer might wish that an eligible employee postpone early retirement until a successor is trained, or a project is completed. Circumstances in this case provide yet another example--employees who were faced with the plant closure, who were eligible to retire early, and who could be expected to leave to seek other opportunities, were induced by the higher benefits to stay on to help WCI close down the Grand Rapids plant.
 
 
 14
 By contrast, there was no arrangement or trade-off between plaintiffs and WCI or any concessions made by these plaintiffs, that could be expected to persuade an employer to pay benefits that were higher than normal. Plaintiffs' jobs had been eliminated. The only "conditions" they can be said to have accepted concerning their early retirement were those that permitted them to elect the more advantageous Kelvinator plan, during the window election period. It does not follow that acting in their self-interest in that regard also entitled them to special early retirement benefits. There was no summary judgment evidence that WCI agreed to pay an increased retirement benefit to these employees in return for their acting exclusively in their own interests by making the election.
 
 
 15
 By its cross-appeal, WCI asserts that the district court erred in granting summary judgment in favor of plaintiff Glen E. Renney for its failure to supply him requested documents. We agree with the district court's conclusion that there was no genuine issue of material fact concerning WCI's violation of 29 U.S.C. § 1132(c), and affirm that portion of the court's order upon the reasoning found in its opinion dated April 3, 1990.
 
 
 16
 The judgment of the district court is affirmed.